677 A.2d 1219

**LINCOLN AVENUE INDUSTRIAL PARK, Appellee,**

v.

**Michael NORLEY and Mary Norley, Husband and Wife, Liberty Arms Distribution, Inc., Liberty Arms Works, Inc., Concrete Service and Supply, Inc., Charles Freels and Freels Corporation.**

**Appeal of Michael Norley, Mary Norley, Liberty Arms Distribution, Inc., Liberty Arms Works, Inc., and Concrete Service and Supply, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued April 16, 1996.

Filed May 30, 1996.

622

Lee M. Herman, Broomall, for appellants.

Michael B. Kean, West Chester, for appellee.

Before KELLY, JOHNSON and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

■ On January 13, 1993, appellee Lincoln Avenue Industrial Park (LAIP) caused a confessed judgment to be entered against appellants Michael and Mary Norley and their corpo-

rations (hereafter referred to collectively as "the Norleys"). This judgment was entered pursuant to warrant of attorney provisions within two leases LAIP had entered into with Charles Freels. The Norleys filed a petition to open/strike the judgment based upon the fact that none of the Norleys' names appear upon the face of either lease. On February 23, 1993, the Honorable Lawrence E. Wood denied the petition to strike but opened the confessed judgment so as to decide whether Freels was acting as the Norleys' agent at the time he signed the leases. After conducting a hearing on this matter, Judge Wood determined that Freels had, indeed, acted as the Norleys' agent and, consequently, that each lease's warrant of attorney for confession of judgment applied to the Norleys. As such, Judge Wood closed the confessed judgment subject to a further hearing concerning damages. On March 15, 1995, Judge Wood set damages at $40,334.46 and denied the Norleys' request to reconsider opening or striking the confessed judgment. This appeal follows.[1]

First, the Norleys contend that a confessed judgment must be stricken where it has been entered against a party who is not named in the warrant of attorney. Judge Wood properly concluded that "[t]he law surrounding this issue is not entirely clear." Opinion, 2/23/94 at 2. Standard Pennsylvania Practice, however, states that:

> Where it does not appear from the face of the instrument, that the signer was signing for, or purporting to sign for, another, no judgment by confession may be entered against the other, since no judgment may be entered against one

---

1. We note that accompanying this appeal is Attorney Thomas A. Fosnocht's application to withdraw as legal counsel for the Norleys. Attorney Fosnocht avers that the Norleys, to this date, have failed to make any payment for legal fees and are without reasonable prospect of being able to pay in the future. Under these circumstances, we believe it is appropriate to grant the application to withdraw. *See* Rule of Professional Conduct 1.16 (an attorney may withdraw from representing a client if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled").

who does not, from the face of the instrument, appear to have executed the instrument.

11 Standard Pennsylvania Practice 2d § 67:30 (citing *Queen City Heating Co., Inc. v. Walden Terrace, Inc.*, 2 D. & C.2d 598, 602 (1955)). After tireless research and careful consideration, however, we are convinced that the above passage does not accurately reflect the proper law of our state.

Over a hundred years ago, our Supreme Court decided the case of *Miller v. Royal Flint Glass Works*, 172 Pa. 70, 33 A. 350 (1895). In *Miller*, the Court addressed the issue of who a judgment by confession may be entered against and concluded that it was not limited to the "name or names appearing in full on the face of the warrant." *Id.* at 75, 33 A. at 350. In so deciding, the *Miller* Court found that "[t]he prothonotary, therefore, in entering the judgment, may inquire who are 'the persons who executed the warrant,' in the sense of who are the legal makers of the instrument liable thereon, even though they did not put their own hands to it, **and their names do not appear on its face.**" *Id.* (emphasis added.)

Forty-five years later, in *Jamestown Banking Co. v. Conneaut Lake Dock & Dredge Co.*, 339 Pa. 26, 14 A.2d 325 (1940), our Supreme Court affirmed the continued validity of *Miller.* In *Jamestown*, the Court stated that "[t]he prothonotary may look beyond the instrument itself and enter judgment against the person or persons who executed the same, but this does not mean signatories alone; it includes partners and principals, whose agents have signed for them." *Id.* at 30, 14 A.2d at 327.

The rule in *Miller* and *Jamestown*, *i.e.*, that when entering a confessed judgment the prothonotary may look beyond the face of the instrument to include all persons who actually executed the warrant, is in complete harmony with the general rule that an undisclosed principal is liable for the acts and contracts of his agent within the scope of the agent's authority. *See Toll v. Pioneer Sample Book Co.*, 373 Pa. 127, 94 A.2d 764 (1953). Moreover, these principles are consistent with the rule that "[a] motion to strike judgment will not be granted

unless the fatal defect claimed appears on the face of the **record.**" *Bank of America v. Copley Qu–Wayne Associates,* 440 Pa.Super. 459, 461, 656 A.2d 121, 122 (emphasis added), *alloc. granted,* 542 Pa. 631, 665 A.2d 466 (1995). *See also Griffin Oil Co. v. Toms,* 170 Pa.Super. 203, 205, 85 A.2d 595, 596 (1952) ("a judgment by confession must be self-sustaining on the record").

 Thus, when a lease contains a warrant of attorney, the trial court may look to the entire record to determine whether an undisclosed principal has executed the warrant through an agent. Once such an undisclosed principal has been revealed, confessed judgment may not be stricken despite the fact that the principal's name does not appear upon the face of the lease. *See Miller, supra; Jamestown, supra.* Instantly, an affidavit, signed by an LAIP partner, states that Freels entered the lease as an agent for appellants. There is no dispute that this affidavit was properly placed in the record. Consequently, we cannot say that the warrant of attorney was defective on the face of the record and, thus, there exists no basis to strike the confessed judgment. *See Jamestown, supra; Miller, supra. See also DeRose v. Lombardi,* 413 Pa. 258, 260–62, 196 A.2d 336, 338 (1964) (affidavit of agency was sufficient to allow a confessed judgment to be entered against the principal). As such, the Norleys first allegation of error must fail.

The Norleys next allegation of error concerns a third lease, which had been negotiated by LAIP and Concrete Service and Supply Co. (one of the appellant companies owned and operated by Michael and Mary Norley), but never signed by any appellant. Originally, the confessed judgment included sums claimed due under this third lease. Upon realizing that the amounts due under the third lease could not properly be encompassed in a confession of judgment, the trial court severed these amounts from the confessed judgment. On appeal, the Norleys allege that " 'unlumping' the improper confession amount from the remainder of the confessed judgment ... was improper" and that the proper remedy is to

strike the entire confessed judgment. Appellants' brief at 14. We disagree.

The Norleys correctly note that in *Dollar Bank v. Northwood Cheese Co.*, 431 Pa.Super. 541, 551–52, 637 A.2d 309, 314, *alloc. denied*, 539 Pa. 692, 653 A.2d 1231 (1994) and *Colony Fed. Savings and Loan Ass'n v. Beaver Valley Engineering Supplies Co.*, 238 Pa.Super. 540, 544–46, 361 A.2d 343, 346 (1976), this Court stated that "[i]f a confessed judgment includes an item not authorized by the Warrant, the judgment is void in its entirety and must be stricken." The Norleys fail to acknowledge, however, that this principle is "one of those general statements which must be read and interpreted in the light of the particular circumstances which gave it expression." *Colony, supra* (quoting *McDowell Nat'l Bank v. Vasconi*, 407 Pa. 233, 235, 178 A.2d 589, 590 (1962)).

■ The confessed judgments in *Dollar Bank* and *Colony* involved single warrant of attorney provisions. As such, there was no question that including an item outside the warrant would pollute the entire confessed judgment. In the instant case, however, three **separate** warrant of attorney provisions are called in to question. Moreover, only items in the third lease's warrant pollute the confessed judgment. As such, we find that *Colony* and *Dollar Bank* are inapplicable. Further, since, in the case at hand, neither of the first two leases's warrants were contaminated, we approve of Judge Wood's "unlumping" the confessed judgment to eliminate its pollution. Consequently, the entire confessed judgment need not be struck and the Norleys' second allegation of error fails.

The Norleys next argue that, upon Judge Wood opening the confessed judgment, LAIP failed to establish that Freels was in fact an agent for all of the named appellants or that he had authority to sign the warrant of attorney clauses.

■ Agency is the relationship which results from the consent of one person that another may act on his behalf. *Smalich v. Westfall*, 440 Pa. 409, 412–14, 269 A.2d 476, 480 (1970). Moreover, "[t]he general rule is that an agency relationship requires no special formalities." *Falconer v. Mazess*,

403 Pa. 165, 169, 168 A.2d 558, 560 (1961). "It need not be in writing and it arises whenever a person authorizes another expressly or by implication, *i.e.,* by words and/or by conduct, to act as his agent." *Id.* Further, "[i]n the absence of express authority, the power of an agent to execute a warrant of attorney to confess judgment against his principal has generally not been inferred." *Bank of America,* 440 Pa.Super. at 463, 656 A.2d at 123.

In the case at hand, after conducting a hearing on the matter, Judge Wood found that Freels was, in fact, the Norleys agent and had authority to sign the warrants. At the hearing, testimony established that Michael Norley, himself, negotiated the first two leases with LAIP. After agreeing on the terms of the leases, however, Norley informed LAIP that he did not want his name to appear in the front of the documents. Instead, Freels, who is Mary Norley's brother, signed the documents, and soon thereafter Concrete Service and Supply, Inc. took possession of the building space. Further, equipment, owned jointly by Mary and Michael Norley, was moved into the space. It was revealed, however, that the Norleys were to be reimbursed for their rental expenses by PennDOT, who had condemned their prior leasehold interest. Judge Wood found that Michael Norley had Freels sign the leases from LAIP which called for $2,395.84 per month in rent, and then Freels purported to sublet the premises to Norley for $18,000 per month. Michael and Mary Norley directed the PennDOT payments, of $16,875 per month (the lowest outside bid), to be made to Freels. After paying the rent due to LAIP, Freels and the Norleys split the excess of PennDOT's money.

■ Thus, LAIP established that Michael Norley negotiated the leases, including the warrant of attorney clauses, and then asked Freels to sign the leases "for him." N.T., 3/18/94 at 60. Specifically, Freels testified that "[Michael Norley] asked me to lease it for him so I leased it for him." *Id.* Further, equipment owned by both Michael and Mary Norley was moved into the space and both Michael and Mary directed PennDOT to pay Freels the rental costs. In light of this

evidence, there is no question that Judge Wood could properly find that Freels was acting on behalf of both Michael and Mary Norley and that Freels had express authority to sign the warrant of attorney clauses. *See Falconer, supra; Bank of America, supra.* Additionally, Concrete Service and Supply, Inc. took possession of the property and rent was paid to LAIP by checks from Concrete Service and Supply, Inc. and Liberty Arms Works, Inc., companies owned and controlled by Michael and Mary. As such, Judge Wood could clearly find that the Norleys were acting in both their individual capacities and as representatives for these companies when they authorized Freels to enter the leases with LAIP. Consequently, the Norleys' third contention fails with respect to these parties.

■ Nevertheless, the record is bare concerning evidence that Liberty Arms Distribution, Inc. was in any way involved with, or benefited from, the leases with LAIP. No checks were drawn from Liberty Arms Distribution, Inc.'s accounts nor was there any evidence offered to establish that the company conducted any business on the LAIP premises. As such, it would be inappropriate to find that Freels was acting on Liberty Arms Distribution, Inc.'s behalf in entering the leases with LAIP. Consequently, we find that the confession of judgment must be rendered void with respect to this company. *See Bank of America, supra* (where person signing the warrant of attorney provision is not authorized to do so, confessed judgment must be vacated).

The Norleys next allege that, as a sub-tenant, a confessed judgment could not be entered against Michael Norley. As noted above, however, evidence was presented which established that Michael Norley was more than just a sub-tenant. Since Norley was, in fact, a principal to the leases with LAIP, it was clearly appropriate to enter a confession of judgment against him. *See Jamestown, supra.*

Next, the Norleys allege that, after opening the confessed judgment, Judge Wood improperly applied the doctrine of unclean hands to then close the judgment. We acknowledge that Judge Wood did base his decision to close the judgment,

in part, upon the doctrine of unclean hands. Nevertheless, having already found on other grounds that the confessed judgment was properly entered against Michael Norley, Mary Norley, Liberty Arms Works, Inc. and Concrete Service and Supply, Inc., we need not reach the merits of this issue. *See In re Barnes Foundation,* 443 Pa.Super. 369, 376, 661 A.2d 889, 893 (1995) ("On appeal, our Court will affirm a trial court's Order if it is correct on any legal ground or theory, regardless of the reason or theory relied on below.").

The Norleys lastly allege that Judge Wood erred in refusing to allow them to supplement the record with the information that LAIP's partners had federal tax convictions. After reviewing the record, we are convinced that Judge Wood adequately addressed this issue by writing the following:

> [T]he well settled rule is that "a new trial based on after discovered evidence will only be granted if that evidence: (1) is new; (2) could not have been obtained at trial in the exercise of due diligence; (3) is relevant and non-cumulative; (4) is not for purposes of impeachment; (5) and must be likely to compel a different result." *D'Emilio v. Board of Supervisors,* 157 Pa.Cmwlth. 64, 628 A.2d 1230, 1233 (1993) (citations omitted).

> [T]he offer in this case fails for a number of reasons. First in reviewing my notes, I reaffirm my recollection that [the LAIP partners] were offered basically to prove the documents in question. They did give some testimony about what Norley said at this point and that point, but to be frank, I did not even place great credence in those statements at that time; I was well aware that the [LAIP partners] had a strong interest in remembering events in a way that enhanced their own case. Knowing that they were convicted of felonies would therefore not be likely to compel a different result.

> In addition, this evidence is obviously offered for the purpose of impeachment, and, since the convictions occurred before the last hearing, could likely have been obtained at that time with little diligence. Consequently, I decline the offer to make that evidence part of the record.

Opinion, 3/15/95 at 2–3. Thus, the Norley's contention on this issue joins the others in failure.

Based on the foregoing, we find that the order and judgment concerning Michael Norley, Mary Norley, Liberty Arms Works, Inc. and Concrete Service and Supply, Inc. are affirmed. We reverse the order concerning Liberty Arms Distribution, Inc., however, and vacate the judgment against this appellant. Jurisdiction relinquished.