Sandra J. BASILE and Laura Clavin, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

H & R BLOCK, INC., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association, Appellees.

Sandra J. Basile and Laura Clavin, Individually and on Behalf of All Others Similarly Situated, Appellees,

v.

H & R Block, Inc., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association.

Appeal of H & R Block, Inc. and H & R Block Eastern Tax Services Inc., Appellants.

Sandra J. Basile and Laura Clavin, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

H & R Block, Inc., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association, Appellees.

Sandra J. Basile and Laura Clavin, Individually and on Behalf of All Others Similarly Situated, Appellees,

v.

H & R Block, Inc., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) Association, Appellees.

Appeal of H & R Block, Inc. and H & R Block Eastern Tax Services Inc., Appellants.

Superior Court of Pennsylvania.

Argued Dec. 17, 1998.
Filed March 3, 1999.

Steven E. Angstreich, Philadelphia, for Sandra J. Basile and Laura Clavin.

N. Louise Ellingsworth, Pro Hac Vice, Kansas City, MO, for H & R Block, Inc. and H & R Block Eastern Tax Services, Inc.

Thomas L. Allen, Pittsburgh, for Mellon Bank (DE) Nat. Ass'n.

Before JOHNSON, MONTEMURO *, and CIRILLO, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we determine the nature of the relationship between mass-market tax preparer H & R Block, Inc., and H & R Block Eastern Tax Services, Inc. (Block), and taxpayers who retained Block's services to file their tax returns under Block's Rapid Refund ®, service between 1990 and 1993. Plaintiffs contend, *inter alia,* that Block was their agent and/or fiduciary and owed them a corresponding duty to disclose that their purported rapid refunds were, in fact, short-term, high interest, refund anticipation loans (RALs) in which Block shared an interest with Defendant Mellon Bank, N.A. (Mellon). The trial court entered summary judgment, concluding that Block was neither a fiduciary nor an agent and, consequently, did not owe the plaintiffs any duty of disclosure. For the following reasons, we reverse in part and remand for further proceedings consistent with this Opinion.

¶ 2 Plaintiffs Sandra J. Basile and Laura Clavin commenced the underlying action by class action complaint in the Court of Common Pleas of Philadelphia County. Plaintiffs named as defendants both Block and Mellon. Plaintiffs alleged, *inter alia,* that Mellon acted as the consumer lender through which the RALs were made and participated with Block in practices designed to deceive consumers as to the true nature of the RALs. Shortly after the action was commenced, Block and Mellon

* Retired Justice assigned to Superior Court.

served notice, pursuant to 28 U.S.C. § 1441, of removal of the case to the United States District Court for the Eastern District of Pennsylvania (U.S.D.C.) on the basis of federal diversity jurisdiction. In federal court, Plaintiffs filed their Amended Class Action Complaint and Demand for Jury Trial asserting substantive counts against both defendants for Violation of Truth in Lending Act, 15 U.S.C. § 1638; Fraud; Negligent Misrepresentation; Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–2–201–9.2 (UTPCPL); and Violation of the Delaware Legal Rate of Interest, 6 Del.Code. § 2301(a). Plaintiffs also asserted Breach of Fiduciary Duty against Block.

¶ 3 The matter proceeded in the U.S.D.C. before the Honorable Edmund V. Ludwig. Upon completion of discovery, both Block and Mellon filed motions for summary judgment on all claims. Judge Ludwig granted Defendants' motions in part, dismissing Plaintiffs' Truth in Lending and interest rate claims. Judge Ludwig also found that "[i]nasmuch as plaintiffs' unfair trade practices claim arises from the bank's interest rate charges, it is preempted by the National Bank Act." *Basile v. H & R Block, Inc.*, 897 F.Supp. 194, 199 (E.D.Pa.1995). The court then remanded the matter to the Court of Common Pleas for disposition of the remaining claims and issues. *Id.*

¶ 4 Following remand, Plaintiffs moved for class certification pursuant to Pa. R.C.P. 1701–1716 and the parties filed cross-motions for summary judgment. In an order dated June 17, 1996, the Honorable Bernard J. Avellino, directed that, for purposes of certification:

the Court will assume (albeit arguendo) that H & R [Block] was the "agent" of any person for whom it prepared a tax return. That assumption is required because a certification motion is not the functional equivalent of a summary judgment motion. Stated differently,

the Court should avoid a merits inquiry when faced with a certification question. Order of Court, 1/17/96. Judge Avellino also denied summary judgment on the parties' cross-motions without prejudice to re-file after the class certification hearing.

¶ 5 Subsequently, the matter proceeded to a class certification hearing before the Honorable John W. Herron. Judge Herron reasoned that the order of the U.S.D.C., which Plaintiffs did not appeal, disposed, *inter alia*, of Plaintiffs' UTPCPL claims in their entireties. Trial Court Opinion, 5/30/98, at 13, 15–19. The court concluded in the alternative, however, that had the claims not been pre-empted, they would not be appropriate for class treatment because Plaintiffs could not show causation without testimony from all individual members of the class. Similarly, Judge Herron denied certification of Plaintiffs' claims for fraud and negligent misrepresentation, citing precedent that would require a showing of individual reliance by each member of the prospective class. *Id.* at 69–70. Due to the numerosity of the class, numbering as many as 600,000, the court found this aspect of proof prohibitive. *Id.* *See* Pa.R.C.P. 1708(a)(2). By contrast, the court granted certification of the prospective class on Plaintiffs' fiduciary duty claim, based in part on Judge Avellino's presumption order, *infra*, and also recognizing that "no consideration of the merits of an action should be undertaken at [the certification hearing]." Trial Court Opinion, *supra*, at 74–75 (citing *Miller v. Federal Kemper Insurance Company*, 352 Pa.Super. 581, 508 A.2d 1222, 1232 (1986)). The court delineated the class certified as:

All Pennsylvania residents who, while having their tax returns prepared by Block, applied for and received a "Rapid Refund" of their federal tax refund during the years 1990 through 1993 through Block's Rapid Refund Anticipation Loan Program at Block's offices or places of business located in the Commonwealth of Pennsylvania.

Order of Court, 5/30/97, at 2. The court also disqualified Laura Clavin as a class representative, citing Clavin's potential conflict of interest under Pa.R.C.P. 1702(4), 1709(2). *Id.* at 1. Judge Herron found that Clavin had been employed as a paralegal at the law firm of class counsel until sometime in 1996. Trial Court Opinion, *supra*, at 9.

¶ 6 Following class certification, the plaintiffs and Block filed cross-motions for summary judgment on Plaintiffs' claim of fiduciary duty. Block asserted that it had not been engaged as agent for the plaintiffs, and further, that there was no confidential relationship between the parties. The matter proceeded for argument before the Honorable Stephen E. Levin, who agreed with Block and granted summary judgment, dismissing Plaintiffs' complaint, ostensibly in its entirety. Memorandum Opinion and Order, 12/31/97. However, in a subsequent Memorandum, Judge Levin opined: "[T]his court does not believe that its dismissal of plaintiffs' *class action suit* has any bearing whatsoever on any *separate, individual claims* under the Pennsylvania Consumer Protection Law." Memorandum, 2/10/98.

¶ 7 Plaintiffs filed this timely appeal from Judge Levin's order granting summary judgment on their claims of breach of fiduciary duty and agency, and from Judge Herron's order finding Plaintiffs' UTPCPL claims pre-empted, and disqualifying Laura Clavin as a class representative. Brief in Support of Plaintiffs' Appeal, at 1–3. Plaintiffs also assert that Judge Levin erred in dismissing their entire action without reference to the individual claims of Clavin and Basile. *Id.* Defendant Block cross-appeals from Judge Avellino's order affixing a presumption of agency to the court's consideration of the motion for certification on Plaintiffs' fiduciary duty claims. Brief of Cross Appellants/Appellees/Cross Appellants [sic] H & R Block, Inc., and H & R Block Eastern Tax Services, Inc., at 1.

¶ 8 We focus initially on Plaintiffs' appeal from Judge Levin's order granting summary judgment to Block on Plaintiffs' claim of breach of fiduciary duty. Our scope of review is plenary. *State Farm Auto. Ins. v. Universal Ins.*, 549 Pa. 518, 701 A.2d 1330, 1331 (1997); *Keselyak v. Reach All, Inc.*, 443 Pa.Super. 71, 660 A.2d 1350, 1352 (1995). Accordingly, we must consider the court's order in the context of the entire record. *Id.* In so doing, we will review the evidence in the light most favorable to the party against whom judgment has been entered to determine if the case is clear and free from doubt. *State Farm Auto. Ins., supra*, 701 A.2d at 1331. *See also Bremmer v. Protected Home Mutual Life Insurance Company*, 436 Pa. 494, 497, 260 A.2d 785, 786 (1970) (Summary judgment is proper "only if the evidence then before the court is such as would warrant the granting of a defendant's point for binding instructions after trial."). "The moving party has the burden of proving the nonexistence of any genuine issue of material fact." *Keselyak, supra*, 660 A.2d at 1353. We will reverse the judgment entered if we find that the trial court committed an abuse of discretion. In this context, abuse of discretion occurs:

> when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Tukovits v. Prudential Insurance Company of America*, 448 Pa.Super. 540, 672 A.2d 786, 789 (1996).

¶ 9 Pennsylvania Rule of Civil Procedure 1035.2 provides that the court may enter summary judgment upon motion where the "adverse party who will bear the burden of proof at trial has failed to produce evidence essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). Judge Levin found,

in ruling on Block's motion, that Plaintiffs had failed to produce evidence to show either principal-agent, or confidential relationships between the parties. The court concluded accordingly that Block did not owe Plaintiffs a fiduciary duty. Memorandum Opinion and Order, *supra*, at 3–8.

¶ 10 We first address the court's ruling that the evidence failed to demonstrate a principal-agent relationship. In support of its ruling, the court found that Plaintiffs merely provided information for the preparation of the return, but that Block prepared "and ultimately filed the returns without any input from (or review by) plaintiffs." *Id.* at 6. The court reasoned, accordingly, that "no evidence has been presented to establish that Basile—or any other plaintiff—exercised *any* substantial control over Block's preparation and electronic filing of tax returns." *Id.*

¶ 11 Upon review of pertinent case law, we conclude that the trial court's conclusion reflects application of an incorrect standard to its consideration of the agency relationship. Though Judge Herron's opinion does not directly so state, the focus of his analysis on control of the mechanical preparation and filing of the plaintiffs' tax returns suggests application of the test for a master-servant relationship.

 ¶ 12 Both we and the Pennsylvania Supreme Court have drawn careful distinctions between the two forms of relationship based on the expansive right of control vested in a master, as opposed to the limited right of control held by other principals. Our Supreme Court has explained that:

> A master is a species of principal, and a servant is a species of agent. A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the service is controlled or is subject to the right to control by the master. Thus a master not only controls the results of the work but also may direct the manner in which such work shall be done, and a servant, in rendering the agreed services, remains entirely under the control and direction of the master. Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal.

*Smalich v. Westfall*, 440 Pa. 409, 414, 269 A.2d 476, 481 (1970). "A principal and agent can be in the role of a master and servant, or simply in the status of two independent contractors." *Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 431 A.2d 1073, 1076 (1981).

 ¶ 13 Agency is "[t]he relationship which results from (1) the manifestation of consent of one person to another that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act." *Smalich, supra,* at 413, 269 A.2d at 480. An agency relationship requires no special formalities and may arise whenever a person authorizes another, expressly or by implication, to act as his agent. *Lincoln Avenue Industrial Park v. Norley*, 450 Pa.Super. 621, 677 A.2d 1219, 1222 (1996). Moreover, the right of control to be exercised by the principal is far less comprehensive than that of a master:

> The right of control of the principal may be exercised by prescribing what the agent shall or shall not do *before the agent acts,* or at the time when he acts, or at both times.... The control of the principal does not, however, include control at every moment, its exercise may be very attenuated and, as where the principal is physically absent may be ineffective.

*Smalich, supra,* at 413, 269 A.2d at 480–81 (emphasis added). Consequently, "control over the means of performance is not the

test for agency, but is the test of the relationship of master and servant. The agent may be an independent contractor, who by contract is responsible *only for the end result ....*" *Commonwealth v. Minds Coal Mining Corporation,* 360 Pa. 7, 18, 60 A.2d 14, 20 (1948) (emphasis added). Accordingly, we conclude that, in Pennsylvania, an agency relationship may be found even where the putative principal merely controls the result, and the agent tenders its performance to achieve that result by means within its own discretion. In so holding, we acknowledge that Defendants have cited numerous decisions in support of a contrary conclusion. We note, however, that none of the decisions is precedential, as each was rendered by a trial court in another jurisdiction, and each applies a more restrictive measure of the right of control in agency than is employed by our Supreme Court. *See Peterson v. H & R Block Tax Services, Inc.,* 971 F.Supp. 1204, 1213 (N.D.Ill.1997) (holding that agency was not established under Illinois law unless plaintiff controlled the *manner and method* in which agent performed its services); *Green v. H & R Block, Inc.,* No.97195023/CC4111, slip op. at 4 (Cir. Ct., Baltimore City, MD June 1, 1998) (holding that agency was not established under Maryland law because plaintiff failed to demonstrate that Block had the power *"to alter the legal relations of the principal"*) (emphasis added); *Stevens v. H & R Block,* No. CV497–245, slip op. at 9 (U.S.D.C. Southern District of Georgia, February 23, 1998) (reasoning that agency could not be established under Georgia law unless principal retained right to control *"time and manner* that the agent executes the agreed upon work, as distinguished from the right merely to require results in conformity with their business arrangement") (emphasis added).

■■■ ¶ 14 Upon applying Pennsylvania's law of agency to the facts of record here, we find that the parties' interaction was legally sufficient to establish an agency relationship. The record establishes that Plaintiffs visited Block offices in response to media promotions of the Rapid Refund program to engage Block to achieve two results: 1) to complete and file their tax returns, and; 2) to obtain a refund of any overpayment of taxes they had made to the Internal Revenue Service. Deposition of Laura Clavin, 11/18/93, at 103–04; Deposition of Sandra J. Basile, 11/17/93, at 33–35. Though the plaintiffs did not direct the actual preparation of tax forms, they remained at Block's office while Block's employee completed the forms. Clavin Deposition, *supra,* at 104–05; Basile Deposition, *supra,* at 39–40. After the employee had completed the return, he or she requested the Plaintiffs' signatures on their returns prior to transmitting the returns to the Internal Revenue Service and the state Department of Revenue. Clavin Deposition, *supra,* at 104–05; Basile Deposition, *supra,* at 39–40.

■■■ ¶ 15 A taxpayer who signs and submits a return bears ultimate responsibility for its contents. *United States v. Romanow,* 505 F.2d 813, 814 (1st Cir. 1974). A taxpayer who submits a false return may suffer substantial penalties for untruthful information contained in the return. 26 U.S.C. § 7206(1) (Fraud and false statements. Declaration under penalties of perjury). We find, as a matter of law, that this responsibility vests every taxpayer with the ultimate right of control over the compilation and filing of his or her return. The filing of the return is, of course, the "end result" of the Plaintiffs' relationship with Block. *See Minds Coal Mining Corp., supra,* at 18, 60 A.2d at 20. Because Plaintiffs engaged Block to file their returns subject to Plaintiffs' right of control and because Block accepted the task accordingly, we conclude that all elements of an agency relationship have been established. *See Smalich, supra,* at 413, 269 A.2d at 480. Plaintiffs consented that Block should act on their behalves, subject to their signatures and their acceptance of possible consequences, and Block acknowledged its consent by preparing the return while the respective plaintiff/taxpayer

waited to sign it. Moreover, because Block does not dispute the purpose for which the plaintiffs retained its services or the terms under which it prepared their tax returns, we conclude, as a matter of law, that the parties were engaged in an agency relationship. *See Juarbe, supra,* at 1076 (stating that if the relevant facts underlying a putative agency relationship are not in dispute, the question of the relationship is properly determined by the court). Accordingly, we find that Judge Levin abused his discretion in finding that the evidence failed to establish a principal-agent relationship between Block and Plaintiffs.

¶ 16 Because we find as a matter of fact, that the evidence establishes a principal-agent relationship, we find as a matter of law that Block owed Plaintiffs a fiduciary duty as to all matters within the scope of the agency. *See Garbish v. Malvern Federal Savings & Loan Ass'n.,* 358 Pa.Super. 282, 517 A.2d 547, 553–54 (1986) (determining that "[f]iduciary relations include, among others, principal and agent"). Consequently, Block owed Plaintiffs a duty in all matters affecting their tax filing and refund transaction to act "with the utmost good faith in the furtherance and advancement of the interests of the [Plaintiffs]." *Id.* 517 A.2d at 554. Such a duty necessarily includes a duty to disclose any circumstances material to the parties' respective performances within the scope of the agency relationship. *See Matter of Estate of Evasew,* 526 Pa. 98, 104, 584 A.2d 910, 912 (1990) (quoting 37 Am Jur 2d, Fraud and Deceit, § 441) (reasoning that a fiduciary seeking to profit by a transaction must disclose "not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge the value of his property"). We remand accordingly for disposition of questions of fact concerning the extent to which Block's failure to disclose the nature of the Rapid Refund program and its participation in the profits generated by the RALs consti-

tuted a violation of Block's duty as agent. Because we find fiduciary duty on the basis of the parties' principal-agent relationship, we need not address Plaintiffs' assertion that a fiduciary duty arose as a result of a confidential relationship or that a duty to disclose arose by virtue of other circumstances. *Compare Young v. Kaye,* 443 Pa. 335, 342, 279 A.2d 759, 763 (1971) (finding confidential relationship and resulting fiduciary duty between tax preparer and elderly man of sound mind for purposes of filing federal income tax return where man had "no apparent knowledge of the intricacies of the federal personal and corporate income tax laws" and signed tax documents completed by preparer without question).

¶ 17 We next address purported errors in Judge Herron's disposition of the issue of class certification. Plaintiffs assert that Judge Herron erred in concluding that the order of the U.S.D.C., disposing of their interest rate claims, preempted Plaintiffs' UTPCPL claim. In support of its finding of preemption, the trial court found that:

> the [U.S.D.C.'s] analysis is cast in the broad terms of 73 Pa.C.S.A. [sic; P.S.] § 201–2(4) without distinctions as to any particular subsection. Moreover, [the court] concluded that any alleged damage sustained by plaintiffs due to violation of § 201–2(4) fell within the parameters of the National Bank Act and was thus preempted by it.

Trial Court Opinion, *supra,* at 17.

¶ 18 Upon careful review of the decision in *Basile,* we disagree with Judge Herron's analysis of the content of the federal court's decision and its affect on Plaintiffs' substantive claims. As discussed, Judge Ludwig concluded in *Basile* that "inasmuch as plaintiffs' unfair trade practices claim arises from the bank's interest rate charges, it is preempted by the National Bank Act." *Basile, supra,* at 199. We find this holding ambiguous on its face and susceptible to competing definitions that accompany the use of "inasmuch as." *See* WEBSTER'S THIRD NEW INTERNATIONAL DIC-

TIONARY OF THE ENGLISH LANGUAGE UNA-BRIDGED 1140 (3d ed.1976) (defining "inasmuch as" to mean "1. In the degree that: INSOFAR AS," or "2. In view of the fact that: ... SINCE, BECAUSE"). We note, however, that Judge Ludwig's discussion clarifies this ambiguity, focusing on specific allegations of Plaintiffs' Amended Complaint. *Basile, supra,* at 198. The court framed its discussion as follows:

> The amended complaint further alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 Pa.C.S.A. [sic; P.S.] § 201–2(4). Specifically, plaintiffs contest the annual percentage rate charged by Mellon Bank. Amended Complaint, ¶ 60; response to motion for summary judgment at 43. Defendants claim federal jurisdiction over this issue by virtue of preemption under the National Bank Act, 12 U.S.C. § 85.

*Id.* Significantly, the court both cited to a particular paragraph of the complaint and characterized that paragraph as a dispute over the appropriate rate of interest. The court neither cited nor addressed allegations elsewhere in the Amended Complaint that delineated other conduct unrelated to the interest charged by Mellon Bank, but cognizable nonetheless under the UTPCPL. Amended Complaint at ¶¶ 55–59. Thus, the court's opinion provides no indication that it intended to dispose of any allegation other than that directly stated in ¶ 60. Accordingly, we find that because the court chose to address only ¶ 60, it restricted its disposition to a determination that the *rate of interest* charged by Mellon Bank could be addressed only as a violation of the National Bank Act, and not the UTPCPL. Thus, though allegations premised on the rate of interest are preempted by Judge Ludwig's order, allegations asserting other grounds for relief are not. Consequently, we conclude the Judge Herron erred in finding that Plaintiffs' UTPCPL claims were entirely preempted.

¶ 19 We disagree also with Judge Herron's conclusion that regardless of the viability of Plaintiffs' substantive cause of action under the UTPCPL, their claim for resulting damages was preempted. Opinion, *supra,* at 17 ("[A]ny alleged damage sustained by plaintiffs due to violation of § 201–2(4) fell within the parameters of the National Bank Act and was thus preempted by it."). Upon review of Plaintiffs' Amended Complaint, in view of the federal court's ruling, we find this conclusion unsupported. Plaintiffs alleged at ¶ 60 that: "as a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Class have sustained damages in that they were caused to pay a usurious and/or outrageous, and/or unreasonable rate for monies lent to them...." Amended Complaint at ¶ 60. Though the federal court's decision necessarily preempts consideration of whether the rate of interest charged is a *substantive basis for relief* under the UTPCPL, it has no bearing on whether the interest the plaintiffs paid is a cognizable *measure of damages* for other viable claims. Stately differently, if the Plaintiffs paid interest as a result of alleged unfair practices carried on by the Defendants, and Plaintiffs prove those practices, they may assert the interest as an item of damages, regardless of the rate charged, or whether the rate itself is a basis for relief. We conclude accordingly that Judge Herron abused his discretion in finding that Plaintiffs' damage claims under the UTPCPL were pre-empted by the National Bank Act.

¶ 20 Because we find that Plaintiffs' UTPCPL claims are not entirely preempted, we must consider Plaintiffs' assertion that Judge Herron erred in refusing class certification on the basis of those claims. We note initially that "trial courts are vested with broad discretion in determining the definition of the class as based on commonality of issues and the propriety of maintaining the action on behalf of the class." *DiLucido v. Terminix International, Inc.,* 450 Pa.Super. 393, 676

A.2d 1237, 1240 (1996) (quoting *Klemow v. Time, Inc.*, 466 Pa. 189, 197, 352 A.2d 12, 16 (1976)). Accordingly, our scope of review is limited and we will not reverse the court's order denying class certification "unless the court neglected to consider the requirements of the rules or abused its discretion in applying them." *Id.* (citing *D'Amelio v. Blue Cross of Lehigh Valley*, 347 Pa.Super. 441, 500 A.2d 1137, 1141 (1985)).

¶ 21 Pennsylvania Rule of Civil Procedure 1702 defines the prerequisites to class certification as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

¶ 22 In this case, Judge Herron found that Plaintiffs' UTPCPL claims lacked commonality and typicality under subsections 2 and 3 "due to the need to establish individual reliance or proof that the alleged misrepresentation caused [Plaintiffs'] damage." Opinion, *supra*, at 18, 66–69. Plaintiffs argue that "[o]nly under the so-called catch-all provisions of the UTPCPL has [the Superior Court] held that reliance was a requisite element." Brief in Support of Plaintiffs' Appeal, *supra*, at 45. Plaintiffs appear to define the "catch-all" provision as 73 P.S. § 201–2(4)(xxi). *Id.*

¶ 23 We agree with Judge Herron's conclusion that the UTPCPL re-

quires a showing of detrimental reliance in private actions based on all provisions of the statute. *See* 73 P.S. § 201–9.2. *See also DiLucido, supra,* at 1241. Additionally, we recognize that an action under the UTPCPL may not be amenable to class certification due to discrepancies in the respective levels of reliance displayed by individual class members. *Id.* In this case, however, we find no need for a demonstration of reliance by any member of the class due to the nature of the parties' relationship. Because Block, as Plaintiffs' agent was bound to conform to the duty of a fiduciary, reliance by the class plaintiffs is implicit and is established by operation of law as to all matters within the scope of the agency. *Cf. Young, supra,* at 279 A.2d at 759 (stating that where fiduciary duty is established, general rule requiring affirmative showing of fraud is inapplicable). Accordingly, while the statutory requirement of detrimental reliance remains applicable under the UTPCPL, the requirement is met without recourse to testimonial evidence from the class plaintiffs. Consequently, we find no basis for the trial court's conclusion that the statutory element of reliance precludes certification of Plaintiff's claims against Block, and we conclude that the court abused its discretion in refusing to certify those claims. Accordingly, we vacate the trial court's order denying certification of Plaintiffs' claims against Block and we remand for certification proceedings consistent with this Memorandum.

¶ 24 Conversely, we agree with the court's decision to deny certification to Plaintiff's claims against Mellon. To state a cause of action under the UTPCPL, Plaintiffs must establish that they suffered an "ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of [the Act]." 73 P.S. § 201–9.2. Interpreting this provision, we have found that "the use of the phrase 'as a result of' indicates the intent of the Legislature to

require a causal connection between the unlawful practice and a plaintiff's loss." *DiLucido, supra*, at 1241. To demonstrate causation on their claims against Mellon, Plaintiff's must demonstrate that they relied to their detriment on Mellon's actions in obtaining and processing their RAL applications and issuing RALs. However, because they failed to aver that Mellon acted in violation of an agency relationship or discreet fiduciary duty, they may not assert the reliance inherent in such a relationship to establish this requirement. Rather, because Plaintiffs' claims against Mellon, unlike those against Block, assert conduct outside the confines of an agency relationship, Plaintiffs must establish reliance as a matter of fact on the basis of the testimony of individual class members. *See Prime Meats, Inc. v. Yochim*, 422 Pa.Super. 460, 619 A.2d 769, 774 (1993) (holding that unfair trade practice claims of class plaintiffs required demonstration of reliance through testimony of individual class members). Because such a showing would vary between class members, Plaintiffs' claims against Mellon are not appropriate for treatment as a class action. *Id.* Accordingly, we affirm the trial court's order denying certification of Plaintiffs' claims against Mellon.

¶ 25 We next consider whether Judge Herron erred in ruling that Laura Clavin was not an adequate class representative due to her apparent conflict of interest as an employee of the law firm of class counsel. In support of its ruling, the court entered the following finding of fact:

> 26. Ms. Clavin testified that beginning in March 1990, she was employed as a paralegal by Levy, Angstreich, Finney, Baldante, Main and Burkett ("Levy"), the law firm representing the plaintiffs in this action. Clavin Dep. at 51. Her employment with this law firm ceased sometime in 1996.

Opinion, *supra*, at 9 (footnote omitted). We read this finding to suggest that Clavin was not employed by class counsel on the date of the certification hearing in 1997.

However, in an accompanying footnote, the Court cited to Plaintiffs' Response to Supplemental Briefs of Defendants Mellon Bank, and Block, in a manner suggestive of skepticism. The court continued:

> This response contained the following terse comment concerning Ms. Clavin's employment:
>
>> Additionally, Plaintiffs call to the Court's attention a change in Plaintiff Laura Clavin's employment, a subject Defendants raised as an issue on her adequacy to serve as a class representative.
>>
>> With respect to the change in Ms. Clavin's employment, plaintiffs advise the Court that Ms. Clavin has ceased her employment with the Levy Angstreich firm. Id. at 1.

*Id.*, n. 14. Thereafter, the court concluded that Plaintiffs' explanation of Clavin's employment situation was not sufficient to establish that Clavin could "adequately assert and protect the interest of the class," within the meaning of Pa.R.C.P. 1702(4) and 1709. *Id.* at 53. The court grounded its conclusion on apparent doubt concerning the veracity of Clavin's claim of separation from the Levy firm and Clavin's earlier countervailing testimony that she had had a close professional relationship with the firm. *Id.* at 52–53. The court stated:

> "The brief, however, provides no details concerning the departure of Ms. Clavin from the firm or about any other continued relation with it. In contrast, her deposition testimony amply documents her close professional involvement with both the firm and this particular case which was initiated more than three years ago."

*Id.* We find the court's reasoning, despite its statement in findings of fact, supportive of a conclusion that Clavin could not demonstrate her immunity to a conflict of interest because she had not demonstrated her independence from the Levy firm.

¶ 26 As we have discussed, our scope of review of a trial court's order denying certification is limited and we will not reverse the order "unless the court neglected to consider the requirements of the rules or abused its discretion in applying them." *DiLucido, supra,* 676 A.2d at 1240 (citing *D'Amelio v. Blue Cross of Lehigh Valley,* 347 Pa.Super. 441, 500 A.2d 1137, 1141 (1985)).

¶ 27 In considering whether a prospective class representative will fairly and adequately assert the interests of the class as contemplated by Pa.R.C.P. 1702(4), the court considers, *inter alia,* whether that party has an apparent conflict of interest in the maintenance of the action. Pa.R.C.P. 1709(2). *See also Klusman v. Bucks County Court of Common Pleas,* 128 Pa.Cmwlth. 616, 564 A.2d 526, 531 (1989). Unless otherwise demonstrated, the court will presume that no conflict of interest exists. *Janicik v. Prudential Ins. Co. of America,* 305 Pa.Super. 120, 451 A.2d 451, 459 (1982). However, where facts of record tend to contradict such a presumption we will require "more than mere conjecture, and conclusory allegations" to establish the absence of a conflict. *Id.* 451 A.2d at 455. Because the burden to establish the requisite elements for class certification falls upon the proponent, that party must, at least, establish "those underlying facts from which the court can make the necessary conclusions and discretionary determinations." *Id.*

¶ 28 We are compelled to conclude that, in view of Clavin's past employment with class counsel as documented of record, satisfaction of Rule 1709 requires that Plaintiffs establish Clavin's subsequent separation by more than mere averment in an unverified brief. Plaintiffs provided the trial court with no documentation of Clavin's current status, nor did they attempt such even belatedly to this Court. Instead, they have merely repeated their prior unverified assertion in their Brief for Appellant, again unverified. Accordingly, we cannot conclude that Judge Herron abused his discretion and we affirm his ruling that Laura Clavin is not an adequate class representative.

¶ 29 We consider next whether Judge Levin erred in dismissing Plaintiffs' Complaint in its entirety where the only claims specified in the Defendants' summary judgment motions related to the collective claims of the class for breach of fiduciary duty and not the individual claims of Basile and Clavin under the UTPCPL. In his Memorandum Opinion and Order entered December 31, 1997, Judge Levin ruled:

[U]pon consideration of the parties' cross motions for summary judgment and all answers thereto, it is hereby ordered that plaintiffs' motion is DENIED and that defendant's motion is GRANTED. As a result, plaintiffs' complaint is hereby DISMISSED.

It is also hereby ORDERED that plaintiffs' motion to modify the protective order in this matter is DENIED as MOOT.

¶ 30 Order entered December 31, 1997. The order provided no qualification of the dismissal of Plaintiffs' complaint, but in a subsequent Memorandum, Judge Levin opined: "[T]his court does not believe that its dismissal of plaintiffs' *class action suit* has any bearing whatsoever on any *separate, individual claims* under the Pennsylvania Consumer Protection Law." Memorandum, 2/10/98. Because this appeal was then pending, however, the court was divested of jurisdiction to amend its December order. Pa.R.A.P. 1701(a).

¶ 31 As we have discussed, our scope of review of a trial court's order granting summary judgment is plenary, allowing us to consider the entire record. *Keselyak, supra,* 660 A.2d at 1353. Should we discern an abuse of discretion or commission of an error of law, we are constrained to reverse the judgment entered. *American States Ins. Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880, 886 (1993).

¶ 32 Upon review of Judge Levin's December 1997 order, we find that the language of the order did not purport to limit its affect either to the Plaintiffs' class claims or to any particular substantive count. Nor did it exclude Plaintiffs' individual claims from the operation of the order. We conclude accordingly that, despite the court's later reservations, the order did dismiss all claims stated in Plaintiffs' Amended Complaint.

¶ 33 Upon review of Block's motion for summary judgment and Plaintiff's cross-motion, we find that the court's ruling is erroneous because it fails to limit the effect of the dismissal to the claims under consideration. Both motions sought only partial summary judgment limited to count four of Plaintiffs' Amended Complaint, which stated a cause of action for breach of fiduciary duty against Block. Neither motion discussed Plaintiffs' claims under the UTPCPL, either in relation to the class or to Basile and Clavin individually. Under similar circumstances, the Commonwealth Court held that an order that purports to dispose of claims beyond the scope of the motion for summary judgment filed by the moving party constitutes a clear abuse of discretion. *See Schreck v. North Codorus Township*, 113 Pa.Cmwlth. 414, 537 A.2d 105, 108 (1987) (holding that trial court abused its discretion in dismissing co-defendant from lawsuit on the basis of summary judgment motion addressing only federal trespass claim under 42 U.S.C. § 1983 while cross-claims in assumpsit remained to be addressed). In *Schreck*, the court recognized that the entry of judgment was legally erroneous because it afforded the moving party the benefit of a summary remedy without requiring the requisite showing of proof under Pa.R.C.P. 1035.

¶ 34 We find the court's reasoning in *Schreck* persuasive, and we adopt it for application here. Accordingly, we find that because Judge Levin's order provided Block the benefit of a summary disposition without imposing the requisite elements of proof under Pa.R.C.P. 1035.2, it constitutes an abuse of discretion. Consequently, we vacate the trial court's order granting summary judgment on the individual claims of plaintiffs Basile and Clavin and remand for further proceedings on those claims consistent with this Opinion.

¶ 35 Finally, we consider the cross-appeal of Block asserting that Judge Avellino erred in ordering a presumption of agency for the purpose of determining whether Plaintiffs' case could continue as a class action. In support of his ruling, Judge Avellino reasoned that:

> [A presumption that Block was Plaintiffs' agent] is required because a certification motion is not the functional equivalent of a summary judgment motion. Stated differently, the court should avoid a merits inquiry when faced with a certification question.

Order of Court, 1/17/96. In certifying that portion of the class action that alleged a fiduciary duty claim, Judge Herron accepted this presumption. Trial Court Opinion at 74–76.

¶ 36 Prior to addressing the propriety of the order, we note that Block has failed entirely to state, either in its Brief or an appendix thereto, where in the record it preserved its objections to the order, either before Judge Avellino, or subsequently before Judge Herron. Pa.R.A.P. 2117(c)(4), 2119(e). Indeed, Judge Herron's opinion suggests that Block did not contest the propriety of the order, but merely sought to limit the extent of its application to decrease the membership of the subject class. Trial Court Opinion at 75. Where such derelictions occur, we are empowered to consider the issue waived. Pa.R.A.P. 302.

¶ 37 Moreover, we find no error either in Judge Avellino's entry of the order or in Judge Herron's adherence to it. The Rules of Court governing class certification provide expressly that:

> The [certification] hearing is confined to a consideration of the class action allega-

588

tions and is not concerned with the merits of the controversy or with attacks on the other averments of the complaint. Its only purpose is to determine whether the action shall continue as a class action or as an action with individual parties only. . . . [I]t is designed to decide who shall be the parties to the action and nothing more. Viewed in this manner, it is clear that the merits of the action and the right of the plaintiff to recover are to be excluded from consideration.

Pa.R.C.P. 1707 Explanatory Note—1977. Accordingly, a court may not dispose of a certification motion on the basis of the perceived insufficiency of the facts pled or the evidence adduced *in support of the substantive cause of action.* To avoid such a disposition, the court may assume such elements of the cause of action as necessary to consider whether the prerequisites for certification are met. *See Janicik, supra,* 451 A.2d at 455 citing *Buchanan v. Brentwood Federal Savings and Loan Ass'n.,* 457 Pa. 135, 320 A.2d 117 (1974) (reasoning that "courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions and judicial notice" to determine, *inter alia,* the question of commonality). Here, Plaintiffs alleged that Block breached a fiduciary duty requiring disclosure of the nature of the RALs and Block's role in profiting from them. The court could only conclude that Block owed a fiduciary duty, in common, to all members of the class upon finding that Block was the agent of all plaintiffs or had engaged in a confidential relationship with them.

¶ 38 Though, as Block argues, the presumption order relieved Plaintiffs of any burden to produce evidence of the agency relationship, Brief for Block at 47, we find no error in it. "Because the requirements for class certification are interrelated and overlapping, the class proponent need not prove separate facts supporting each; rather, her burden is to sufficiently establish those underlying facts from which the court can make the necessary conclusions

and discretionary determinations." *Id.* 451 A.2d at 455. In this case, Plaintiffs established that the class proponents both relied on Block to complete and file their tax returns and to submit and process their RAL requests. Block does not seriously dispute that it completed these tasks. We find these circumstances sufficient to allow Judge Avellino's exercise of discretion in entering the presumption order. Accordingly we affirm said order.

¶ 39 Order granting summary judgment **REVERSED.** Order denying class certification on Plaintiffs' UTPCPL claims **REVERSED** as to H & R Block; **AFFIRMED** as to Mellon Bank. Order establishing presumption of agency for purpose of class certification hearing **AFFIRMED.** Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**